UNITED STATES of America, Appellant,

v.

Samuel L. BEWLEY and Elizabeth Bewley, Appellees.

No. 96–C–279–K.

United States District Court, N.D. Oklahoma.

Aug. 11, 1997.

Jay P. Golder, Nancy S. Bramson, U.S. Dept. of Justice, Tax Division, Washington, DC, for Appellant.

Kenneth V. Todd, Tulsa, OK, for Appellees.

## ORDER

KERN, Chief Judge.

Before the Court is the objection of the United States to the Report and Recommendation of the United States Magistrate Judge. The Magistrate recommended that the decision of the United States Bankruptcy Court for the Northern District of Oklahoma in *In re Bewley,* 191 B.R. 459 (Bankr. N.D.Okla.1996) be affirmed. The government has timely filed its objection.

The facts are thoroughly set forth in the bankruptcy court opinion and the Magistrate's recommendation. To summarize, Samuel Bewley ("Debtor") incorporated Phoenix Transportation, Inc. ("Phoenix") in 1987. Debtor operated Phoenix until January 1990, when he fell into ill health. (At the time of the 1995 trial in bankruptcy court, debtor was 81 years old). In January 1990, debtor and his wife transferred all Phoenix stock to their son, Mike Bewley. Mike operated Phoenix from early 1990 until his death on May 28, 1992. Upon his son's death, debtor began operating Phoenix again. During the period when Mike operated the company, it accrued outstanding federal withholding taxes in the amount of $110,742.57.

The Internal Revenue Service ("IRS") approached debtor, and on or about June 17, 1992, Phoenix and the IRS entered into an agreement which allowed Phoenix to continue to operate and to make payments on the outstanding taxes owed. Phoenix agreed to pay a percentage of its gross monthly revenues to the IRS each month and to use the balance of gross revenues to meet operating expenses. Phoenix remained in operation for some months and made payments to the IRS

in the amount of $26,789.03. After approximately four months, Phoenix ceased operations. On August 5, 1993, the debtor and his wife filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code. The IRS filed a proof of claim in the amount of $113,076.00 for unpaid trust fund taxes of Phoenix. Debtor filed a motion to disallow claim pursuant to 11 U.S.C. § 502(a).

■ The Internal Revenue Code requires employers to withhold income and Federal Insurance Contribution Act taxes from their employees' wages. The amounts collected from the employees' wages are considered to be held by the employer in trust for the United States. The funds may not be used by the employer for any other obligations, including but not limited to operating expenses. *United States v. Kim*, 111 F.3d 1351, 1356 (7th Cir.1997). In seeking satisfaction of unpaid tax liability, the IRS may create a lien against the employer's property *or* may seek to impose personal liability pursuant to 26 U.S.C. § 6672. It is the second course which the IRS chose in the case at bar.

■ Section 6672(a) provides in pertinent part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to [sic] a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

The § 6672 penalty may be assessed against (1) any responsible person[1] (2) who has willfully failed to collect, account for, or pay over federal employment taxes. *Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir.1993). Once the IRS assesses a putatively responsible person with a penalty under § 6672, that person bears the burden of showing by a preponderance of the evidence either he was not a responsible person or he did not act willfully. *Finley v. United States*, 82 F.3d 966, 970–71 (10th Cir.1996).

■ The bankruptcy court rejected the IRS penalty claim, ruling (1) debtor could not be liable because there were insufficient assets in the corporation when debtor reassumed control[2] and (2) debtor did not act "willfully" because he used company funds to keep the business running pursuant to the agreement between Phoenix and the IRS. The Magistrate Judge rejected the first rationale, but accepted the second. Debtor has not filed an objection to the Report and Recommendation.[3] The only issue before this Court is whether debtor acted willfully.

■ The determination of willfulness under § 6672 is an issue of fact, which can only be overturned if clearly erroneous. *Bradshaw v. United States*, 83 F.3d 1175, 1182–83 (10th Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 296, 136 L.Ed.2d 215 (1996). In *Finley v. United States*, 82 F.3d 966, 971 (10th Cir.1996) (citations omitted), the court stated:

> Generally, a responsible person's failure to pay over withholding taxes may be described as willful under two theories. First, under what might be called a theory of actual knowledge or intent, a responsible person's conduct is willful if that person 'acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes.' Second, a responsible person can also act willfully if she 'acts with a reckless disregard of a known or

---

1. A person who is "required to collect, truthfully account for, and pay over" the tax is commonly referred to as a "responsible person". *Kim*, 111 F.3d at 1357.

2. A responsible person under § 6672 does not violate that statute by willfully using employer funds for purposes other than satisfaction of the trust-fund tax claims of the United States when at the time he assumed control there were no funds with which to satisfy the tax obligation and the funds thereafter generated are not directly traceable to collected taxes referred to by that statute. *Slodov v. United States*, 436 U.S. 238, 259–60, 98 S.Ct. 1778, 1791–92, 56 L.Ed.2d 251 (1978).

3. Debtor has also inexplicably not filed a response to the government's objection.

obvious risk that trust funds may not be remitted to the government.'

■ For reasons unexplained by the parties, the agreement itself is not present in the record.[4] The government argues that by signing the agreement on behalf of Phoenix, debtor "made a voluntary, conscious and intentional decision to prefer other creditors over the United States." (Appellant's Brief at 4). In other words, debtor had not acted willfully and was not personally liable *until* he entered the installment agreement with the IRS. The Court rejects this reasoning. It bears repeating that personal liability under § 6672 is a *penalty*, and penalties are imposed for some sort of fault. No fault is to be ascribed to an individual who enters into an installment agreement presented to him by the IRS itself, and which contemplates by its terms that a percentage of the company's funds will be used for operating expenses.

The government further states that "[i]f the debtor wanted personal protection under the agreement, he could have negotiated a contract term that provided personal protection." (Appellant's Brief at 5 n. 3). Leaving aside the grossly unequal bargaining position of the parties, the very purpose of the "willfulness" requirement is to avoid across-the-board imposition of personal liability against all responsible persons. It is a drastic change in status to become *personally* liable for taxes owed by one's company. The Court believes such a change in status must be explicitly set forth in the installment agreement and explained to the person potentially liable. The debtor in this case did not have the burden to "negotiate" the point that he was not agreeing to become personally liable for over $100,000.[5]

The government additionally opines that "[i]f the IRS cannot enter into installment agreements without a guarantee that the terms of the agreement are limited to those written in the contract, the IRS will simply use its powers of seizure and levy to get its

money and will refrain from entering into installment agreements. This would be an unfortunate result." *Id.* The government has failed to produce a copy of the agreement, and therefore the Court cannot determine what the terms of the agreement were. In any event, the Court fails to see the undue burden on the IRS in placing a provision in such installment agreements that clearly explains to the debtor the implications of personal liability for potentially huge sums. If the IRS deems it "unfortunate" that it cannot lay snares for unwary laypersons, so be it.

Finally, the government relies upon the statement in *Muck v. United States*, 3 F.3d 1378, 1382 (10th Cir.1993), that "[o]nly if plaintiff can establish that the agreement specifically provided that he, individually, would be held harmless can the presence of the agreement relieve him of personal liability." *Muck* is distinguishable. First, the agreement in that case was between the corporation's general manager (not the plaintiff) and the IRS. Second, as the Magistrate Judge has pointed out, the plaintiff in *Muck* sought to use the agreement to *relieve* liability which already existed. Here, the IRS seeks to use the agreement to *impose* personal liability upon an individual who sought nothing more than to keep his company operating, a circumstance forced upon him by his son's death. Upon review of the record, the Court concludes that the bankruptcy judge's finding of lack of willfulness was not clearly erroneous.

It is the Order of the Court that the appellant's objection (# 8) to the Magistrate Judge's Report and Recommendation is hereby DENIED. The decision of the bankruptcy court below is AFFIRMED.

### *REPORT AND RECOMMENDATION*

McCARTHY, United State Magistrate Judge.

The instant appeal from the United States Bankruptcy Court for the Northern District

---

4. The agreement was apparently not introduced into evidence before the bankruptcy court. *See Bewley*, 191 B.R. at 460 n. 2.

5. At trial, the IRS agent who negotiated the agreement with debtor testified that the agent did not tell debtor he would be held harmless or would be relieved of personal liability if the corporation made payments (July 28, 1995 transcript at 6 11.19–25) and that the agent told debtor it "looked like [debtor] would be a responsible person of this corporation" (*Id.* at 7 11. 6–8). Again, at that point debtor had no personal liability of which to be "relieved" because only a responsible person who willfully fails to pay is personally liable.

of Oklahoma is before the undersigned United States Magistrate Judge for report and recommendation. *Griego v. Padilla,* 64 F.3d 580 (10th Cir.1995). The appeal has been fully briefed and an advisory hearing was held on July 10, 1996.

The United States appeals from the order of the Bankruptcy Court, Stephen J. Covey, J., disallowing the Internal Revenue Service's proof of claim. Because the Court agrees with the Bankruptcy Court that Plaintiff did not "willfully" fail to pay over employee withholding taxes, the undersigned United States Magistrate Judge RECOMMENDS that the decision of the Bankruptcy Court, *In re Bewley,* 191 B.R. 459 (Bankr.N.D.Okla. 1996), be AFFIRMED.

## I. JURISDICTION AND STANDARD OF REVIEW

The District Court has jurisdiction over this appeal under 28 U.S.C. § 158. The Bankruptcy Court's legal conclusions are subject to *de novo review. Phillips v. White (In re White),* 25 F.3d 931, 933 (10th Cir. 1994). The Bankruptcy Court's findings of fact are reviewed under the "clearly erroneous" standard. *Bartmann v. Maverick Tube Corp.,* 853 F.2d 1540 (10th Cir.1988).

## II. PROCEDURAL HISTORY AND FACTS

On August 5, 1993, the debtor, Samuel L. Bewley ("Bewley" or "Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code. The Internal Revenue Service ("IRS") filed a proof of claim for a penalty assessment pursuant to 26 U.S.C. § 6672. The penalty assessment was based on nonpayment over to the United States of income and social security taxes withheld from the wages of employees of Phoenix Transportation, Inc. for the second and third quarters of 1990, all four quarters of 1991, and the first quarter of 1992. Bewley filed an objection to the IRS proof of claim, maintaining that he was not a responsible person as defined under § 6672.

The relevant facts are not in dispute; the following information is taken directly from the Memorandum Opinion of the Bankruptcy Court. *Bewley,* 191 B.R. at 460–61.

Phoenix Transportation, Inc. ("Phoenix"), an Oklahoma corporation, operated a flatbed trucking business within the continental United States. Samuel Lawrence Bewley ("Debtor") incorporated Phoenix in June 1987. Debtor had been in the trucking business since 1934; at the time of the trial he was 81 years old. When Phoenix was incorporated, Debtor served as president; Debtor's wife, Elizabeth Jane Bewley, served as secretary and treasurer; and Debtor's son, Mike L. Bewley ("Mike Bewley"), served as vice-president.

Initially, Debtor and his wife owned all of the stock of Phoenix. However, on January 2, 1990, Debtor and his wife transferred all of the stock of Phoenix to their son, Mike Bewley. Debtor was in ill health at the time of the stock transfer. Debtor was to receive $250,000.00 at the rate of $2,500.00 per month from the sale of the stock.

The record is clear that Debtor was not a responsible person for Phoenix between January 2, 1990 and June 1, 1992.[1] Mike Bewley was in control of the operations of Phoenix and was the responsible person for Phoenix from early in 1990 until his death on May 28, 1992. Debtor's duties at Phoenix during this time were in sales only.

During the period when Mike Bewley was the responsible person for and had control of the operations of Phoenix, the company accrued outstanding federal withholding taxes in the amount of $110,742.57. These withholding taxes, called "trust fund taxes," include federal social security and income taxes withheld from employees wages. The outstanding trust fund taxes accrued during the second and third quarters of 1990, during all four quarters in 1991, and during the first quarter of 1992.

After Mike Bewley's death on May 28, 1992, Debtor began operating Phoenix again. On June 1, 1992, at the time Debtor assumed operating the company, Phoenix had approxi-

---

1. Debtor and the IRS stipulated that Debtor was not a responsible person for Phoenix during the period when the outstanding federal withholding tax liability accrued.

mately $8,662.00 in the bank. The company was generating income and accounts receivable of $90,000.00 to $100,000.00 per month. Phoenix's operating expenses were between $80,000 and $90,000 per month. During June of 1992, Phoenix received $84,991.15 in accounts receivable.

On or about June 17, 1992, Phoenix and the IRS entered into an agreement which allowed Phoenix to continue to operate and to make payments on the outstanding trust fund taxes owed to the IRS.[2] Phoenix agreed to pay a percentage of its gross monthly revenues to the IRS each month and to use the balance of gross revenues to meet operating expenses. During the months that followed, Phoenix remained in operation and made the agreed payments to the IRS on the outstanding taxes in the amount of $26,789.03 and paid the trust fund taxes which accrued during that time. After approximately four months, Phoenix could not meet its financial obligations and the business was closed. During all times when Debtor operated Phoenix and was the responsible person for Phoenix, both before and after the time when Mike Bewley operated Phoenix, all current trust fund taxes were paid.

On August 5, 1993, the Debtor and his wife filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code. The IRS filed a proof of claim for a responsible person penalty assessment against the Debtor in the amount of $113,076.00 for unpaid trust fund taxes of Phoenix. Debtor filed a Motion to Disallow Claim of the Internal Revenue Service pursuant to 11 U.S.C. § 502(a).

The Bankruptcy Court conducted a trial on July 13, and July 28, 1995, and entered its order disallowing the IRS proof of claim on February 6, 1996, the IRS perfected a timely appeal to the United States District Court.

### III.   BANKRUPTCY COURT HOLDING

Following the two-day trial, the Bankruptcy Court found that although Debtor was not a responsible person when the outstanding

taxes accrued, he became a responsible person subject to the penalty when he regained control of Phoenix. *Bewley,* 191 B.R. at 462. However, applying the Supreme Court's analysis in *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), the Bankruptcy Court ruled that Debtor's liability was limited to the $8,662 Phoenix had in the bank when he regained control of the company. *Bewley,* 191 B.R. at 462.

Further, the Bankruptcy Court found that:

[t]he IRS's agreement which allowed Phoenix to continue in operation precludes a finding of Debtor's willful failure to pay. Debtor failed to pay pursuant to an agreement. Therefore, such failure to pay cannot be construed as willful.

*Id.* at 463. The Bankruptcy Court concluded that, under *Slodov,* the $8,662.00 liquid assets (cash) on hand at the time Debtor assumed control should have been paid to the IRS on the trust fund taxes previously accrued. However, since the evidence demonstrated that after Debtor assumed control $26,789.03 had been paid against the accrued trust fund taxes, the Bankruptcy Court concluded that Debtor had no liability as a responsible person for Phoenix and denied the IRS claim in full.

There is no dispute that Debtor was a responsible person once he assumed control of the company as of June 1, 1992. *Bewley,* 191 B.R. at 462. The United States appeals the Bankruptcy Court's exclusion of Phoenix's accounts receivable collected within 30 days after Debtor assumed control of Phoenix ($84,991.15) from its calculation of the company's assets for the purpose of determining the Debtor's § 6672 liability under *Slodov.* The United States also challenges the Bankruptcy Court's ruling that Debtor lacked the requisite willfulness for responsible person liability to attach under § 6672; the ruling that the agreement between Phoenix and the IRS shielded Debtor from liability under § 6672; and the Bankruptcy Court's reduction of Debtor's liability by the

---

**2.** Phoenix and the IRS executed IRS Form 433(d) on or about June 17, 1992. Form 433(d) is not a part of the record. However, the testimony at trial indicated that the agreement re-

quired Phoenix to pay a percentage of its gross monthly revenues to the IRS in payment of the outstanding trust fund taxes.

amount of the payments Phoenix made to the IRS.

## IV. DISCUSSION

The Internal Revenue Code requires employers to withhold federal social security and income taxes from their employees' wages as those wages are paid. 26 U.S.C. §§ 3102(a) & 3402(a); *Bowlen v. United States*, 956 F.2d 723, 726 (7th Cir.1992). Because the employer is only required to pay over the taxes quarterly, the accumulated withholdings are deemed to constitute a "special fund in trust for the United States." 26 U.S.C. § 7501(a); *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). Once the employer withholds taxes from an employee's wages, the withholdings are credited to the employee regardless of whether they are paid over to the government; therefore, "the IRS has recourse only against the employer for their payment." *Id.* One of the IRS's most effective tools for ensuring it receives withheld trust-fund taxes is 26 U.S.C. § 6672, which creates personal liability for persons within an employer's business who are responsible for collecting and paying over the withheld taxes but willfully fail to do so. Section 6672 in part provides:

> (a) General Rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to [sic] a penalty equal to the total amount of tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

Thus, § 6672 imposes liability on a person if: (1) the individual is a person responsible for collecting and paying over trust-fund taxes, and (2) the individual willfully failed to carry out these responsibilities. *Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir. 1993); *Hochstein v. United States*, 900 F.2d 543, 546 (2d Cir.1990). Once the IRS assesses a putatively responsible person with a penalty under § 6672, that person bears the burden of showing by a preponderance of the evidence either he was not a responsible person or he did not act willfully. *Finley v. United States*, 82 F.3d 966, 970 (10th Cir. 1996); *Hochstein*, 900 F.2d at 546.

### A. Treatment of Accounts Receivable

In *Slodov*, the Supreme Court discussed the extent of personal liability for trust fund taxes § 6672 incurred by one who becomes a "responsible person" for a company owing back trust fund taxes under § 6672. In that case, the petitioner Slodov, an orthodontist, purchased the stock and assumed the management of three corporations engaged in the food vending business. At the time of the purchase the companies were indebted for approximately $250,000 in trust-fund taxes. However, at the time petitioner assumed control, the corporations had no liquid assets. The IRS advised petitioner it had no objection to his continuing operations so long as current tax obligations were met and the arrearage was paid as soon as possible. After the petitioner assumed control of the companies, the corporations acquired sufficient funds to pay the taxes, but the funds were used to pay employees' wages, rent, suppliers and other creditors and to meet day-to-day expenses in operating the business. After a short period of time the corporations terminated operations and filed for bankruptcy. During that time current taxes were paid, but no payments were made on the back trust-fund taxes. The IRS sought to collect the entire $250,000 from petitioner. *Slodov*, 436 U.S. at 240–44, 98 S.Ct. at 1782–83.

The Supreme Court determined that under § 6672 one who assumes control of a business **does not** become a guarantor for payment of delinquent taxes simply by undertaking to continue operation of the business. *Id.*, 436 U.S. at 252–54, 98 S.Ct. at 1788. Nor does § 6672 operate to impress a trust on after-acquired cash. *Id.*, 436 U.S. at 254–56, 98 S.Ct. at 1789. The Court stated "there must be a nexus between the funds collected and the trust created. That construction [of § 7501] is consistent with the accepted principle of trust law requiring tracing of misappropriated trust funds into the

trustee's estate in order for an impressed trust to arise." *Id.*, 436 U.S. at 254–58, 98 S.Ct. at 1789–90. The Court concluded:

> We hold that a "responsible person" under § 6672 may violate the "pay over" requirement of that statute by willfully failing to pay over trust funds collected prior to his accession to control when at the time he assumed control the corporation has funds impressed with a trust under § 7501, but that § 7501 does not impress a trust on after-acquired funds, and that the responsible person consequently does not violate § 6672 by willfully using employer funds for purposes other than satisfaction of the trust-fund tax claims of the United States when at the time he assumed control there were no funds with which to satisfy the tax obligation and the funds thereafter generated are not directly traceable to collected taxes referred to by that statute. That portion of the judgment of the Court of Appeals on the Government's cross-appeal holding petitioner liable under § 6672 for wage withholding and FICA taxes required to be collected from employees' wages prior to January 31, 1969, is Reversed. [footnote omitted].

*Id.*, 436 U.S. at 259–60, 98 S.Ct. at 1791.

In holding that Debtor's liability was limited to the $8662 in cash Phoenix had on hand at the time he assumed control of the company, the Bankruptcy Court relied upon the fact that "in *Slodov* the Court clearly declined to hold that all after-acquired cash of the corporation was impressed with a trust in favor of the United States." *Bewley*, 191 B.R. at 462. The Bankruptcy Court declined to follow the Seventh Circuit's decision in *Purdy Co. of Illinois v. United States*, 814 F.2d 1183 (7th Cir. 1987) which holds that *Slodov* permits "liquid assets" other than cash and bank accounts to be included in the calculation of funds impressed with a trust at the time a new "responsible person" takes over control of a corporation. In a footnote the Bankruptcy Court expressed its belief that *Purdy* could not be reconciled with the Supreme Court holding in *Slodov*. *Bewley*,

191 B.R. at 462 n. 3. Based on its interpretation of *Purdy*, the Bankruptcy Court rejected the IRS's contention that the $84,991.15 of accounts receivable paid to Phoenix in the month following Debtor's assumption of control of the company should be included as liquid assets impressed with a trust under § 7501.

This Court takes a contrary view. It is this Court's opinion that the $84,991.15 in accounts receivable deposited by Phoenix within 30 days of the time Debtor re-gained control of the company are liquid assets impressed with a trust under § 7501. The *Slodov* holding does not limit application of "responsible person" penalties only to cash on hand. The Supreme Court extended its holding to situations where "there were **no funds** with which to satisfy the tax obligation **and** the funds thereafter generated are not directly traceable to collected [trust-fund taxes]." *Slodov*, 436 U.S. at 259–60, 98 S.Ct. at 1791. [emphasis supplied]. Said differently, under *Slodov* § 6672 responsible person liability might[3] attach to a new person in control in two situations: (1) when funds are on hand at the time of accession to control, and (2) when after-acquired funds are directly traceable to withheld taxes. *See e.g. Purdy*, 814 F.2d at 1190. These limitations require careful analysis.

First, the Court must determine whether, at the time Debtor took over, there were funds available with which to satisfy the existing tax obligation. Since the corporations in *Slodov* had no unencumbered assets, the Supreme Court did not specifically define what it meant by the term "funds," nor has the Tenth Circuit addressed the issue. However, the Supreme Court characterized the corporations in *Slodov* as having "no liquid assets." 436 U.S. at 242, 246, 251, 98 S.Ct. at 1782, 1785, 1787. The use of the term "liquid assets" indicates that the word "funds" in *Slodov* has a broader meaning than just cash and bank accounts. In *Purdy*, the Seventh Circuit reached this conclusion.

The *Purdy* Court affirmed the district court ruling that "holdback funds"[4] retained

---

**3.** Subject to a finding of willfulness, discussed *infra*. at pp. 676–78.

**4.** The "holdback" funds were monies returned to the employer car dealership by General Motors and represented the accumulation of 2% rebates

by an automobile manufacturer from an auto dealer were "liquid assets" or "funds" for purposes of the *Slodov* rule that new persons in control of a failing enterprise may be responsible for past withholding tax delinquencies to the extent the employer corporations had funds or liquid assets at the time of transfer of control. The Court stated that the "holdback" funds could be construed either as funds generated by business transacted before the change in control and thus as funds unrelated to the new responsible person's activities or as "funds" or "liquid assets" owned by the company at the time of the change in control. *Purdy,* 814 F.2d at 1189. Because the holdback funds were an obligation of a creditworthy obligor to pay back funds within 60 days of the time of accession to control, the Court held that the funds must be considered "liquid assets" and therefore as "funds" for purposes of *Slodov* analysis. Further, since the Debtor was on notice that the holdback funds were an item promptly reducible to cash as of the time of accession to control, the holdback funds were impressed with a trust-fund obligation. *Id.* at 1191.

In the present case Debtor testified that at the time he took over Phoenix, there were accounts receivable on the books [Tr. 41] and the business ordinarily took in $90,000 to $100,000 per month. [Tr. 43]. Phoenix deposited $84,991.15 during June 1992, the month following Debtor's accession to control of the company. There is no contention that these funds were generated by work done during that month. Debtor's testimony was unequivocal that the freight bills to Phoenix's customers were either paid promptly by those customers or were sent to one of several factoring companies in order to immediately generate cash. [Tr. 32–38; 41]. Like in *Purdy,* the Debtor was on notice that the accounts receivable were promptly reducible to cash as of the time he took control of the company.

The same result should obtain in this case as in *Purdy.* The Phoenix accounts receivable were paid promptly after Debtor's ac-

cession to control, and were attributable directly to work done before the change in control. Those promptly paid accounts receivable, measured by the funds deposited during the month of June 1992, must be considered "liquid assets" for the purpose of the *Slodov* analysis. Therefore, under *Slodov,* the proper measure of Debtor's liability is the $8,662 cash on hand and the $84,991.15 accounts receivable paid within 30 days; a total of $93,653.15.

### B. *Willfulness*

Upon the death of his son and resuming operation of the corporation, Debtor became a responsible person and was obligated to "pay over" to the government the liquid assets of the corporation in satisfaction of the past due taxes. If the Debtor willfully failed to "pay over" the liquid assets, he would become personally liable, up to the amount of the liquid assets, for the past due taxes under § 6672 and *Slodov.* Personal liability is imposed on the responsible person under § 6672 only if the person willfully fails to carry out the responsibilities of collecting, accounting for, or paying over withholding taxes. The dispositive question in this case is the same one presented to the Court in *Finley v. United States,* 82 F.3d 966, 971 (10th Cir.1996):

> The question is whether his action or inaction on this obligation was accompanied by the scienter necessary to create liability. *Slodov,* 436 U.S. at 254, 98 S.Ct. at 1788–89 (§ 6672 does not impose "an absolute duty to 'pay over'" delinquent withholdings and "was not intended to impose liability without personal fault").

Once the IRS assesses a responsible person with a penalty under § 6672, that person bears the burden of showing by a preponderance of the evidence that either he is not a responsible person or he did not act willfully. *Finley,* at 970.

Here, the Bankruptcy Court found that the Debtor met his burden of proof and concluded that he did not act willfully, as follows:

> The IRS's agreement which allowed Phoenix to continue in operation precludes a

to be paid by GM on each purchase of a car by the dealership. In essence the funds were the dealership's own funds held on deposit by an

obligor of immense credit-worthiness. *Purdy,* 814 F.2d at 1190.

finding of Debtor's willful failure to pay. Debtor failed to pay pursuant to an agreement. Therefore, such failure to pay cannot be construed as willful.

*Bewley,* 191 B.R. at 463. This finding of fact by the Bankruptcy Court may only be disturbed if found to be clearly erroneous. *See Bradshaw v. U.S.,* 83 F.3d 1175 (10th Cir. 1995) (recognizing that in the Tenth Circuit willfulness is a question of fact subject to the clearly erroneous standard of review).

Before Debtor took over control of the company, he had no personal liability for the back taxes, as he was not a responsible person at the time the tax obligation was incurred. As an alternative to paying over the liquid assets of the company to the government, the Debtor negotiated an agreement with the government whereby the company would continue to operate, utilize its liquid assets to pay other creditors and make installment payments on the back taxes. Because no evidence was adduced on this point, we do not know what provision, if any, the agreement made for the contingency that the company might fail to stay in business and likewise, might fail to pay all of its back taxes.

Certainly the government was not required to enter into this agreement. The government could have insisted that the Debtor immediately pay over the liquid assets or incur personal liability under § 6672. Additionally, the government could have negotiated for the Debtor's contingent personal liability as part of the agreement should the company fail to make all of the necessary installment payments. However, there is no evidence in the record that the government availed itself of any of these alternatives. The only evidence regarding the agreement in the record was the undisputed fact that the government allowed the Debtor to use the liquid assets to pay other creditors and accepted installment payments against the back taxes.

The government contends that despite this agreement, the Debtor nonetheless "willfully" failed to "pay over" the liquid assets of the company to the government. The Court rejects the government's contention as unsupported by law, logic or the fundamental fairness that must exist between the government and its citizens.

Once the government made this agreement with the Debtor, the rights of the parties were governed by the agreement, not by § 6672. Thus, on the record presented to the Bankruptcy Court, Debtor's liability, if any, should have been based on the agreement, not a willful failure to "pay over" under § 6672. Reduced to its essence, the conclusion of the Bankruptcy Court, and this Court, is that the government may not agree with Debtor that he can utilize the liquid assets of the company to pay other creditors and then come before the Court and assert that the Debtor "willfully" failed to "pay over" the liquid assets of the company to the government. *See generally McCarty v. U.S.,* 437 F.2d 961, 969–70 (Ct.Cl. 1971) (finding of willfulness precluded based, in part, on existence of installment agreement for payment of delinquent taxes).

*Muck v. United States,* 3 F.3d 1378 (10th Cir.1993), cited by the government is not determinative of this case. In *Muck,* the corporate president sought a refund of a § 6672 penalty assessed against him. He maintained that a payment agreement between the IRS and the company's general manager refuted a finding of willfulness. The *Muck* Court concluded that because the president was a responsible person and had incurred § 6672 personal liability for his willful failure to pay over the back taxes, the agreement between the general manager of the company and the IRS did not serve to release the president of his pre-existing personal liability unless it specifically provided that he was personally held harmless. *Id.* at 1382.

*Muck* is not controlling because this case presents an entirely different factual and procedural situation. In *Muck* the Tenth Circuit reviewed and affirmed the district court's grant of summary judgment in favor of the United States regarding the Plaintiff's tax liability. The record was examined, *de novo,* to determine if any genuine issue of material fact was in dispute. *Muck,* 3 F.3d at 1380. This case, however, is an appeal from the Bankruptcy Court in which that Court resolved the factual dispute concerning the existence of willfulness. That factual

finding is entitled to a degree of deference to which the Plaintiff's position in *Muck* was not entitled.

Furthermore, in *Muck* the president sought to *refute* a finding of willfulness and sought *relief* from liability which already existed. Unlike the president in *Muck*, here Debtor was not already liable for the taxes. He was not a responsible person at the time the taxes were incurred and upon becoming a responsible person he obtained an agreement with the government permitting use of the company's liquid assets for the payment of other creditors. The question in *Muck* was whether the agreement *relieved* the president of liability. The question here is whether Debtor ever became liable in the first place. It makes sense to require an agreement with the IRS to specifically include a hold harmless provision to absolve the president in *Muck* from the liability that already exists. It makes no sense to require absolution where no liability exists.

### V. CONCLUSION

The Bankruptcy Court's finding of fact that Debtor did not "willfully" fail to pay over the liquid assets of the corporation is supported by the evidence and not clearly erroneous. Accordingly, this Court recommends that the Bankruptcy Court finding that Debtor did not "willfully" fail to "pay over" be AFFIRMED and that Debtor be found to have no liability to the government pursuant to § 6672.

In accordance with 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b), any objections to this report and recommendation must be filed with the Clerk of the Court within ten (10) days of after being served with a copy of this report. Failure to file objections within the time specified waives the right to appeal from the judgment of the District Court based upon the factual findings and legal questions addressed in the report and recommendation of the Magistrate Judge. *Talley v. Hesse*, 91 F.3d 1411, 1412 (10th Cir.1996), *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).